UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CHAD BLEDSOE, | Case No. 1:09-cv-564 |
| Plaintiff, | Barrett, J. |
| | Wehrman, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 14-25) (ALJ's decision)).

**I.**

Plaintiff filed applications for DIB and SSI on June 15, 2005, alleging a disability onset date of December 31, 2002. (Tr. 110-113, 423-25). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 62-65 & 67-68.) Plaintiff then timely requested a hearing before an Administrative Law Judge. (Tr. 69). Judge Peter Edison conducted a hearing on November 7, 2007 at which Plaintiff and a vocational expert testified. At the hearing, Plaintiff amended his onset date to July

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

17, 2004. (Tr. 442A).

On December 22, 2007, ALJ Edison found that Plaintiff was not disabled at any time from July 17, 2004 through the date of his decision. (Tr. 49-57). Plaintiff requested review by the Appeals Council. (Tr. 89). The Appeals Council granted review and remanded the case to an ALJ for further proceedings. (Tr. 94-98).[2] On remand, the case was assigned to ALJ Deborah Smith. An additional hearing, at which Plaintiff was represented by counsel, was held on November 25, 2008. (Tr. 459-495). A vocational expert also appeared and testified.

On February 5, 2009, ALJ Smith found that Plaintiff was not disabled at any time from July 17, 2004 through the date of her decision. (Tr. 11-25). The Appeals Council denied review on June 8, 2009; therefore, ALJ Smith's decision stands as Defendant's final determination. (Tr. 5-7).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since July 17, 2004, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2] The remand Order from the Appeals Council instructs the ALJ to obtain all updated medical evidence; properly consider the opinion of Dr. Sanchez in accordance with 20 C.F.R. § 404.1527 and 416.967 and SSR 96-2p and 96-5p and explain the weight given to such opinion; if necessary, obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (Tr. 97).

2

3. The claimant has the following severe impairments: back/neck pain, osteoporosis of the cervical and lumbar spine, carpel tunnel syndrome, hypothyroidism, obesity, depression with underlying dysthymia, panic disorder with agoraphobia, and gender identity disorder (20 CFR 404.1521 *et seq*., and 416.921 *et seq*.).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot perform jobs requiring complex instructions or a significant amount of interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965.)

7. The claimant was born on July 17, 1954 and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963.)

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2004 through the date of this decision. (20 CFR 404.1560(g) and 416.960(g)).

(Tr. 16 - 25).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB and/or SSI.

On appeal, Plaintiff maintains that: (1) the ALJ erred in weighing the opinion of Plaintiff's treating psychologist; (2) the ALJ erred in weighing the opinion of Olga Wells, a nurse practitioner; and (3) the ALJ erred in formulating Plaintiff's RFC. For the reasons outlined below, the undersigned finds that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further fact-finding.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A. Consideration of Plaintiff's Residual Functional Capacity

In the initial decision, ALJ Edison adopted the opinions of the state-agency reviewing physicians and formulated Plaintiff's RFC based on such opinions. (Tr. 55-56). However, while ALJ Edison adopted the mental limitations described by the reviewing psychologists in their mental RFCs (Tr. 349, 353, 367), he chose to adopt only certain exertional limitations described by Dr. Bancks, a state agency reviewing physician.[3] ALJ Edison did not include the following additional limitations mentioned by Dr. Bancks: nonrepetitive use of the bilateral upper extremities (Tr. 370); never climb ladders, ropes; only occasionally balance, stoop or crouch (Tr. 371); and avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards. (Tr. 373). ALJ Edison provided no explanation for his decision to exclude such limitations found by Dr. Bancks.[4]

ALJ Smith adopted the RFC and rationale of ALJ Edison. ALJ Smith stated that "the overall evidence, including the updated evidence, does not warrant departure from

---

[3] In March 2006, Dr. N. Bancks, a state agency physician, reviewed Plaintiff's records, and opined that Plaintiff could perform light level exertional work, with limitations on using his upper extremities for repetitive activities. (Tr. 370). Plaintiff could frequently climb ramps and stairs, kneel or crawl; occasionally balance, stoop, or crouch; but, never climb ladders, ropes or scaffolds. (Tr. 371). Dr. Bancks further opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, vibrations, and hazards such as machinery and heights. (Tr. 373).

[4] Plaintiff also appears to asserts that the ALJ failed to include limitations found by Du Nguyen, a single decisionmaker (SDM). Du Nguyen also completed an RFC assessment for the state agency (Tr. 339-46). A single decisionmaker is not a medical source. *See* 20 C.F.R. §§ 404.906, 416.1406. However, there is no indication that the ALJ relied on this assessment. (Tr. 23).

the residual functional capacity established in ALJ Edison's prior decision." (Tr. 23). ALJ Smith further found that the findings of state agency physicians deserve significant weight and no changes are made to ALJ Edison's residual functional capacity assessment. (*Id.*). ALJ Smith did not provide any explanation for omitting the additional limitations described above. Plaintiff asserts that such omission constitutes reversible error. The undersigned agrees.

The Sixth Circuit has found that to be entitled to substantial deference...[an ALJ's non-disability finding] must clearly articulate the rationale underlying the decision. *See Hurst v. Secretary of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985). In *Hurst*, the court discussed the articulation necessary to support an ALJ's decision regarding disability benefits. The Court stated: "[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is *absolutely essential* for meaningful appellate review." *Hurst*, 753 F.2d at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)).

Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes. Similarly, Social Security Ruling ("SSR") 82-62, provides that the "rationale for a disability decision must be written so that a clear picture of the case can be obtained." SSR 82-62 at *4. The ALJ's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.; See also Morris v. Secretary of Health & Human Servs.,* No. 86-5875, 1988 WL 34109, at * (6th Cir. Apr. 18, 1988) (*per curiam*) (noting, in reliance upon *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981), that, when an ALJ fails to mention relevant evidence in his or

her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored").

The Commissioner argues, however, that the ALJ is not required to adopt any one medical source opinion in its entirety.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); SSR 96-5p, 1996 WL 374183 ("an RFC assessment is the adjudicator's ultimate finding based on a consideration of [a medical source's] opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)."). The Sixth Circuit has recognized that under the regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his residual functional capacity.'"  *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 633 (6th Cir. 2004) (citations omitted).  Thus, the fact that the ALJ's RFC finding does not precisely align with a particular doctor's opinion is not a basis for overturing that finding.  Although the ALJ stated that she was giving significant weight to the state agency opinions, she was not required to adopt every limitation those doctors identified.  The Commissioner further asserts that even if the ALJ should have adopted all the limitations described by Dr. Bancks, any omission had no bearing on the ALJ's ultimate finding that Plaintiff could perform the three occupations identified by vocational experts at the administrative hearings.

The undersigned agrees that the ALJ was not required to adopt every limitation identified by the reviewing doctors, however, she was required to provide a sufficient

8

explanation for the rejection of such limitations. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Here, the ALJ's failure to provide any explanation for the rejection of the additional limitations found in the state agency physician's RFC assessment deprives the Court of the ability to conduct any meaningful review. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir.2001) (in determining claimant's RFC, ALJ must review all relevant medical and non-medical evidence and explain his conclusions and rejections). Thus, remand is required in this case because otherwise, this court is left wholly to speculate on the reasons for the ALJ's omission of the additional limitations outlined by the state agency physicians.

### B. Consideration of Plaintiff's Treating Sources

Plaintiff further maintains that the ALJ erred in weighing the opinions of Dr. Sanchez, Plaintiff's treating psychiatrist, and Olga Wells, an advanced registered nurse practitioner (ARNP) who treated Plaintiff at Shands Medical Center. Because the Court has recommended that this case be remanded for a redetermination of Plaintiff's RFC, the ALJ should also properly reevaluate the weight given to the findings of Dr. Sanchez and Ms. Wells.

*i. Dr. Sanchez*

Plaintiff treated with Dr. Eduardo Sanchez at the Shands Medical Center since November 2007. (Tr. 383). Dr. Sanchez completed a psychiatric/psychological impairment questionnaire on February 7, 2008, wherein he diagnosed major depression, severe, non-psychotic, treatment-resistant, and panic disorder with agoraphobia. (Tr. 383-390). The original form lists Plaintiff's GAF as "60". Dr. Sanchez later explained that this was an error, and he meant to assign a GAF of "50." (Tr. 415A).[5] Dr. Sanchez assessed Plaintiff's prognosis as "poor." (*Id.*). Dr. Sanchez found that Plaintiff is markedly limited in his ability to perform mental demands of work involving social functioning and concentration, persistence or pace (Tr. 387) and is incapable of even "low stress" jobs (Tr. 389). He also opined that Plaintiff would be absent from work as a result of his impairments more than three times a month. (Tr. 390).

The ALJ found Dr. Sanchez's opinion to be "internally inconsistent, completely unexplained," and inconsistent with the other substantial evidence of record. The ALJ noted that there are no treatment records from Dr. Sanchez, therefore making it impossible to verify that the treatment notes reflect the degree of limitation found by Dr. Sanchez. (Tr. 22).

In his statement of errors, Plaintiff asserts that the progress notes from Dr. Sanchez were not made part of the record by Plaintiff's prior counsel. (Doc. 8, p. 5). However, in

---

[5] GAF is used to report the clinician's judgment of the individual's overall level of functioning. GAF is divided into functioning ranges and scored on a scale of 0 (an individual is found to be a danger) to 100 (an individual is found to have superior functioning in a wide range of activities). See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM IV-TR). A GAF score of 50 indicates serious symptoms (e.g., suicidal ideations, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

his reply memorandum, Plaintiff asserts that the record contains several pages of treatment notes belonging to Dr. Sanchez. (Doc. 15, p. 2). Specifically, the address listed by Dr. Sanchez on the last page of the Mental RFC form is the same as the address of Shands Medical Center. (Tr. 390). Thus, it appears that Dr. Sanchez practiced at the Shands Medical Center.

Accordingly, Plaintiff asserts that the ALJ erred in evaluating the opinion of Dr. Sanchez because the record contains several pages of psychiatric progress notes related to Dr. Sanchez's treatment of Plaintiff. (Tr. 237, 247, 255-256, 258, 260-262, 264-265, 273, 275, 278-279, 281, 283-285, 287-288). *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998) (To the extent that the treatment notes may have been unclear, regarding the exact number of visits attributable to treating physician, as opposed to nurse-practitioners and others at the clinic, it was the Commissioner's responsibility to clarify the record).

Thus, it is unclear if the record contains treatment notes from Dr. Sanchez. Accordingly, on remand, the ALJ shall obtain treatment notes from Dr. Sanchez and/or determine if Dr. Sanchez's treatment notes are part of the record, and reevaluate the weight to be given to the opinion of Dr. Sanchez in light of the supporting treatment notes, and to provide an accurate RFC assessment.

  ii.  *Ms. Wells*

Ms. Wells, a nurse practitioner, treated Plaintiff under the supervision of Dr. Heimer at Shands Medical Center from May 2007 to at least January 2008. (Tr. 378, 392-397). On January 10, 2008, Ms. Wells completed an application for a Disabled

Person's Parking Permit, reporting that Plaintiff was disabled due to severe limitations in his ability to walk and was unable to walk without the use of an assistive device. (Tr. 378). Also on January 10, 2008, Ms. Wells prescribed bilateral hand splints and a new cane. (Tr. 379). The ALJ gave no weight to Ms. Wells' opinion relating to Plaintiff's use of a cane, finding that Ms. Wells was not an acceptable medical source and that her opinion was unsupported. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (explaining that nurses are not acceptable medical sources).

After considering evidence from "acceptable" medical sources for purposes of establishing an impairment, evaluators "may also use evidence from other sources [such as nurse practitioners] to show the severity of your impairment(s) and how it affects your ability to work…" 20 C.F.R. §§ 404.1513, 416.913. Social Security Ruling 06-3p states that "an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source… if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Thus, even as a nurse practitioner, Ms. Wells' opinion, if properly supported, may have been given more weight pursuant to SSR 06-3p.

Here, the record contains bone density tests from Shands Medical Center showing severe osteoporosis. (Tr. 408, 414). The progress notes from Shands Medical Central repeatedly document Plaintiff's complaints of back and knee pain. Plaintiff testified that he has pain in his back, knees and hips, and requires the use of a cane. (Tr. 442). The

12

ALJ also found Plaintiff's back/neck pain and osteoporosis of the cervical and lumbar spine to be severe impairments.

The ALJ rejected these findings because she found that there were no functional limitations associated with such findings, and the claimant's sex change from female to male might distort the bone density results. (Tr. 20). However, Plaintiff's testimony regarding back and knee pain and his need to use a cane appear to be signs and/or symptoms directly relating to his severe osteoporosis and degenerative disc disease. Furthermore, there is no evidence in the record suggesting that the results from Plaintiff's bone density tests are somehow distorted due to Plaintiff's sex change operation.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears, in making this determination, the ALJ in part impermissibly acted as her own medical expert. *See Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir. 1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. *See McBrayer v. Secretary of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996).

Because this matter must be remanded to reevaluate Plaintiff's RFC assessment, the ALJ should also revisit the weight assigned to Ms. Wells in accordance with SSR 06-09p, and reevaluate Plaintiff's need to use a cane and ability to perform light work.

### III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

### IV.

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner to deny plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

**IT IS FURTHER RECOMMENDED** that, on remand, the ALJ be instructed to: (1) determine if the record contains treatment notes from Dr. Sanchez, and/or obtain treatment notes from Dr. Sanchez; (2) reevaluate the weight to be given to the opinion of

Dr. Sanchez in light any supporting treatment notes; (3) properly weigh the medical evidence and provide a thorough and complete analysis of the weight assigned to each opinion in accordance with SSR 96-2; (4) reevaluate the weight afforded to Ms. Wells in accordance with SSR 06-06p and reconsider Plaintiff's use of a cane and incorporate such use, if necessary, into Plaintiff's RFC; and (5) provide an accurate RFC based on all relevant medical and non-medical evidence and clearly articulate the rationale underlying the decision, including the basis for including and/or rejecting limitations found by medical sources.

Date:  August 30, 2010                              s/ J. Gregory Wehrman
                      J. Gregory Wehrman
                      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHAD BLEDSOE,         Case No. 1:09-cv-564

 Plaintiff,            Barrett, J.
                  Wehrman, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

 Defendant.

## NOTICE

 Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and

Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).